A01A1530. FULMORE et al. v. CSX TRANSPORTATION, INC.
A01A1531. BARNES v. CSX TRANSPORTATION, INC.
A01A1532. HALL et al. v. CSX TRANSPORTATION, INC.
A01A1533. JERNIGAN v. CSX TRANSPORTATION, INC.
A01A1534. CREWS v. CSX TRANSPORTATION, INC.
A01A1535. SCOTT v. CSX TRANSPORTATION, INC.
A01A1536. ADAMSON v. CSX TRANSPORTATION, INC.
A01A1537. STEWART v. CSX TRANSPORTATION, INC.
A01A1538. GRAY et al. v. CSX TRANSPORTATION, INC.
A01A1539. WARD v. CSX TRANSPORTATION, INC.
A01A1540. POWELL v. CSX TRANSPORTATION, INC.
A01A1541. DEEN v. CSX TRANSPORTATION, INC.
A01A1542. GREEN v. CSX TRANSPORTATION, INC.
A01A1543. BOOTH v. CSX TRANSPORTATION, INC.
A01A1544. HARRIS v. CSX TRANSPORTATION, INC.
A01A1545. PAYNE v. CSX TRANSPORTATION, INC.
A01A1546. BRYANT v. CSX TRANSPORTATION, INC.
A01A1547. MOODY v. CSX TRANSPORTATION, INC.
(557 SE2d 64)

BLACKBURN, Chief Judge.

This appeal involves 18 related cases arising from the trial court's grant of summary judgment to defendant CSX Transporta-

tion, Inc. (CSX) in plaintiffs' (employees) Federal Employers' Liability Act (FELA) actions based upon plaintiffs' contraction of asbestosis and other asbestos-related diseases. Each complaint alleged FELA claims based upon approximately 18 failures of CSX under the Act, including the failure to provide a reasonably safe workplace, tools and equipment, and a failure to warn plaintiffs or to protect them from the dangers of asbestos.

Employees claim that the trial court erred by (1) granting CSX's motion for summary judgment on grounds that plaintiffs failed to prove they had been exposed to a specific minimum level of asbestos sufficient to induce asbestosis; (2) failing to grant plaintiffs' motions to set aside summary judgment on grounds that plaintiffs were not allowed the statutory time period to respond to CSX's summary judgment filings prior to the trial court ruling thereon; and (3) granting CSX's motion in limine to exclude evidence of fear of cancer. For the reasons set forth below, we affirm in part and reverse in part.

1. We first address the employees' claim that the trial court erred by granting CSX's motion for summary judgment on grounds that they failed to prove that they had been exposed to a specific minimum level of asbestos sufficient to induce asbestosis.

Section 51, of 45 USC §§ 51-60, provides, inter alia, that: "Every common carrier by railroad while engaging in commerce . . . shall be liable in damages to any person suffering injury while he is employed by such carrier in . . . commerce . . . for such injury or death resulting in whole or in part from the negligence of . . . such carrier."

The statute itself, although it conditions a defendant's liability on a showing of negligence, does not define negligence; rather, the contours of negligence under FELA were left by Congress to the decisional law of federal courts. *Urie v. Thompson*.[1] The United States Supreme Court has reiterated the strong relationship between the federal common law of negligence and that of the various states. It has noted that "common law principles, where not rejected in the text of the statute, are entitled to great weight in interpreting [FELA]." (Punctuation omitted.) *Metro-North Commuter R. Co. v. Buckley*.[2] In that same opinion, the Supreme Court quoted approvingly from Justice Souter's concurrence in *Consolidated Rail Corp. v. Gottshall*,[3] where he stated that the Court's duty "in interpreting FELA . . . is to develop a federal common law of negligence . . . informed by reference to the evolving common law." Therefore, although decisions of

---

[1] *Urie v. Thompson*, 337 U. S. 163, 174 (69 SC 1018, 93 LE 1282) (1949).
[2] *Metro-North Commuter R. Co. v. Buckley*, 521 U. S. 424, 429 (II) (117 SC 2113, 138 LE2d 560) (1997).
[3] *Consolidated Rail Corp. v. Gottshall*, 512 U. S. 532, 558 (114 SC 2396, 129 LE2d 427) (1994).

federal and state courts applying state tort law do not *determine* the meaning of negligence under FELA, nonetheless, they can serve as persuasive authority where appropriate. Under FELA, "a plaintiff must prove the traditional common law elements of negligence: duty, breach, foreseeability, and causation." (Punctuation omitted.) *Bagley v. CSX Transp.*[4] At trial, plaintiffs must demonstrate that CSX knew, *or should have known*, that their exposure to asbestos dust placed them at risk of contracting asbestosis, yet failed to inform or protect them. See id.

Plaintiffs do, however, have a relaxed burden in proving causation in FELA actions. See *Paul v. Missouri Pacific R. Co.*[5] Plaintiffs must only provide a reasonable basis for a jury to conclude that the employer's negligence played a part in producing the injury for which damages are sought. See *Savage v. Union Pacific R. Co.*[6] (FELA and exposure to creosote). "[T]he test of a jury case is simply whether the proofs justify with[in] reason the conclusion that employer negligence played any part, *even the slightest*, in producing the injury or death for which damages are sought." (Emphasis supplied.) *Rogers v. Missouri Pacific R. Co.*[7]

This case involves the grant of summary judgment to movant/defendant by the trial court. Under such circumstance, the movant has the burden of proving the nonexistence of any genuine issue of material fact. *Mallard v. Jenkins.*[8] The movant has this burden, even as to issues on which the plaintiff has the burden at trial. *Piano &c. Center v. Southland Bonded Warehouse.*[9]

Defendant argues that plaintiffs' claims must fail as a matter of law, because plaintiffs have no evidence regarding the amount of asbestos that plaintiffs were exposed to during the period of their employment with defendant. Defendant took no air samples prior to 1993. Defendant contends that because asbestosis is a dose-response phenomenon, the risk posed to humans from contact with asbestos is a function of the quantity of exposure to asbestos. Defendant contends that it follows, therefore, that there is a threshold level of exposure value (TLV) necessary to cause asbestosis. If a person's exposure to asbestos is less than this TLV, one would not expect such a person to contract asbestosis. CSX further argues that without evidence of the actual quantity of asbestos to which plaintiffs were exposed while

---

[4] *Bagley v. CSX Transp.*, 219 Ga. App. 544, 545 (1) (465 SE2d 706) (1995).

[5] *Paul v. Missouri Pacific R. Co.*, 963 F2d 1058 (8th Cir. 1992).

[6] *Savage v. Union Pacific R. Co.*, 67 FSupp.2d 1021, 1027, 1031-1032 (E.D. Ark. 1999).

[7] *Rogers v. Missouri Pacific R. Co.*, 352 U. S. 500, 506-507 (77 SC 443, 1 LE2d 493) (1957).

[8] *Mallard v. Jenkins*, 179 Ga. App. 582 (347 SE2d 339) (1986).

[9] *Piano &c. Center v. Southland Bonded Warehouse*, 139 Ga. App. 480, 482 (3) (228 SE2d 615) (1976).

working for defendant, plaintiffs cannot show that the quantity of asbestos fibers in the air during the relevant times exceeded the then accepted TLV. CSX argues that it is entitled to summary judgment as a matter of law because plaintiffs will not be able to prove either (1) that defendant breached the duty of ordinary care or (2) that plaintiffs' exposure to asbestos at defendant's workplace was sufficient to cause plaintiffs' asbestosis.

These contentions are made as to all of the subject cases, even though it is unrefuted that asbestosis is caused solely by exposure to asbestos,[10] that with one exception, all of the plaintiffs, or plaintiff's deceased, contracted asbestosis,[11] and that only three of the eighteen plaintiffs had exposure to asbestos other than at their CSX workplace.[12] All but two of the plaintiffs worked for CSX for more than fifteen years. Under Georgia law, "[a]s a general proposition issues of negligence, diligence, [and] proximate cause . . . are not susceptible to summary adjudication but must be generally resolved by a jury except in plain, palpable and indisputable cases where reasonable minds could not disagree." *North v. Toco Hills, Inc.*;[13] *Epps Air Svc. v. DeKalb County*.[14] Also, "certain issues, such as those calling for the application of a standard of conduct to certain facts, seldom lend themselves to summary treatment." See Gregory, Ga. Civil Practice (2nd ed.), § 7-3 (A), p. 565.

> Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. A de novo standard of review applies to an appeal from a grant of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant.

(Citation omitted.) *Matjoulis v. Integon Gen. Ins. Corp.*[15]

Viewed in this light, the record shows that in October 1991, plaintiffs filed suit, seeking to recover for asbestosis (except Hall) and other asbestos-related injuries sustained as a result of occupational exposure to asbestos while employed by CSX in its shops in Waycross. Plaintiffs are either current or former employees of CSX.

---

[10] Affidavit of Dr. Isabella K. Sharpe, Pulmonary Medicine, states "asbestosis [is] a permanent, non-treatable lung condition caused only by exposure to asbestos." Record, Deen, Case No. A01A1541, p. 892.

[11] Millard Mannen Hall, deceased, Case No. A01A1532, did not have asbestosis.

[12] Lawton Gray, Case No. A01A1538; Hubert Talmadge Booth, Sr., Case No. A01A1543; and John Ray Moody, Case No. A01A1547.

[13] *North v. Toco Hills, Inc.*, 160 Ga. App. 116, 119 (286 SE2d 346) (1981).

[14] *Epps Air Svc. v. DeKalb County*, 147 Ga. App. 195, 196 (1) (248 SE2d 300) (1978).

[15] *Matjoulis v. Integon Gen. Ins. Corp.*, 226 Ga. App. 459 (1) (486 SE2d 684) (1997).

Each worker individually sued CSX, alleging that CSX negligently exposed him (or her) to asbestos-containing products and, as a result, each became ill. All plaintiffs, except Hall, in Case No. A01A1532, have been diagnosed with asbestosis; however, some have been diagnosed with asbestos-related pleural disease as well.[16] There were also two wrongful death claims[17] and one fear of cancer allegation.[18]

Plaintiffs worked for CSX or its predecessors in interest[19] for varying lengths of time between 1938 and the present, occupying a variety of job classifications. During their employment, plaintiffs worked with or had been exposed to a variety of asbestos-containing products, including brake shoes, gaskets, siding, floor tile, insulating materials, packing materials, pipe covering, and cement. Plaintiffs worked with or around asbestos-containing products and were around visible dust generated from such products, while performing their duties. The affidavit of Robert L. Rollins, Jr., a retired general foreman for CSX, who held a management position and had worked at the Waycross shop facilities during the period of 1960 through 1993, established certain facts for summary judgment purposes. Rollins' affidavit provides, inter alia, that:

5. Asbestos containing products including various insulation, pipecovering, cement, gaskets, packing, brake shoes, siding and flooring materials were used throughout the Waycross Shops on a daily basis from the time [he] began work at CSXT until approximately 1993. 6. The use of these products created visible dust on a daily basis throughout the Shop facility throughout my career. 7. It is my opinion that anyone who worked in the CSX Waycross, Georgia Shop facility during these years would have been exposed to this visible dust on a regular basis. 8. I know that it was asbestos because I ordered asbestos gaskets and other asbestos containing materials and asbestos was written on the packages. I was familiar with what was in the storeroom where these materials were kept and saw them being used in the shops. Dust was created daily from use of these products, it was

---

[16] One plaintiff has sued in her individual capacity and as executrix. Hall, Case No. A01A1532. She does not claim to have an illness, but claims to have been exposed to asbestos through handling her husband's laundry.

[17] Hall, Case No. A01A1532 (nonmesothelioma cancer); Gray, Case No. A01A1538 (asbestosis, asbestos-related pleural disease).

[18] Emalene Matthews Hall, whose husband died of cancer, Case No. A01A1532, individually alleges that she was exposed from doing her husband's laundry, but her complaint does not seem to assert a cause of action in her own right, other than for the wrongful death of her husband.

[19] CSX's predecessors in interest include Seaboard System Railroad, Inc., Seaboard Coast Line Railroad, Seaboard Air Line Railroad, and Atlantic Coast Line Railroad.

visible and could be seen every day I worked there. 9. I was instructed by Mark Badders in the late 1980's or early 1990's to remove all asbestos containing products from the storeroom and tool room. I was told by Mr. Badders to keep quiet about this and not to tell any of the workers. Danny Kirkland removed the asbestos products after I showed him where they were kept. 10. To my knowledge no sampling of the air for asbestos fibers was ever done in the area of workers while I was working there. 11. No safety meetings were held to teach our employees using asbestos of the dangers of asbestos or how to use it without risking health consequences. To my knowledge, the workers at the railroad here in Waycross were never warned that asbestos exposure could harm their health. 12. No safety precautions were ever implemented, to my knowledge, to be used by workers when using asbestos products.

Because CSX did not conduct air sampling tests prior to 1993 (when Rollins retired) per Rollins' affidavit,[20] plaintiffs were unable to offer actual historical air sampling data indicating the concentration of asbestos fibers in the air over the course of their employment. However, to prove exposure, plaintiffs offered the affidavit testimony of Arthur Frank, M.D. and Donald Ostrum, M.P.H. Drs. Frank and Ostrum offered their opinions that CSX subjected each plaintiff to a dangerous work environment throughout his or her employment because of the persistent presence of "visible dust," which, in their opinions, contained unsafe concentrations of asbestos.

Ostrum based his opinions on plaintiffs' deposition testimony regarding their own individual work history, including the type of materials they worked with (e.g., pipe covering, insulation) and on plaintiffs' affidavits which state that they were exposed to and breathed asbestos dust on a daily basis, that they used asbestos-containing products, and that there was visible dust on a daily basis, as well as the affidavit of Rollins. Under Georgia law, an expert may rely on hearsay as well as reports of others in formulating his opinions. *Joiner v. Lane*.[21] Such reliance goes to the weight, not the admissibility, of the expert's opinion. *J. B. Hunt Transport v. Brown*[22] (expert's lack of firsthand knowledge and inconsistencies in testi-

---

[20] We note that in a deposition in a prior case, William Edwin Mims testified that although he did not know when air sampling of any type was done at the Waycross workplace, he thought it was in the mid-1980s. For summary judgment purposes, the evidence is construed most favorably for the nonmovant, and we accept the 1993 time period for purposes of this review. See Record, Fulmore, Case No. A01A1530, pp. 2294, 2306.

[21] *Joiner v. Lane*, 235 Ga. App. 121 (508 SE2d 203) (1998).

[22] *J. B. Hunt Transport v. Brown*, 236 Ga. App. 634 (512 SE2d 34) (1999).

mony went to weight and not admissibility).

"CSXT admits that it is the successor in interest and liability to Seaboard System Railroad, Inc., The Seaboard Coast Lines Railroad, The Atlantic Coast Line Railroad, and The Seaboard Air Line Railroad." CSX's answer, par. 2, p. 3. We note, that in *Bagley*, supra, this court found that there was no evidence of record that CSX was the successor in liability for its corporate predecessors. This court went on to say, however, that "because a jury could reasonably infer that [physicians reported back to predecessors], we find that the discussion of the hazards of asbestos and ways to prevent dust induced lung disease evidenced in the minutes provide[s] 'some, if minimal, probative facts in the record to show knowledge on the part of (CSX's predecessors).'" *Bagley*, supra at 546 (1). This court held that because in that case, CSX denied that it was a successor in liability to Seaboard, and plaintiffs failed to prove that fact, there was no evidence that CSX either knew or should have known of the information imparted to its predecessor corporations. Likewise, plaintiffs failed to establish that CSX was a successor in liability to such corporations. In this case, such fact stands admitted, as outlined.

Plaintiffs relied upon the record, which included the deposition of Marvin Pelon, records custodian for the Association of American Railroads (AAR), authenticating their minutes. The record also contains excerpts of the AAR Minutes, Medical and Surgical Section, for the years 1932, 1933, 1935, 1937, 1939, 1940, 1941, 1951, 1952, 1953, 1957, and 1958, which demonstrate both that railroad doctors discussed the hazards of dust and asbestos, including carcinogenicity and safety precautions which should be taken at the workplace. The minutes outlined above suggested the installation of forced air ventilation systems, the analysis of the air for dust, the instruction of employees regarding wetdown procedures, the implementation and enforcement of a breathing (respirator) protection program, and the provision of nontoxic substitutes for asbestos. None of these matters were adopted by CSX. See also affidavit of Dr. Ostrum.

Representatives of CSX's corporate predecessors, for which CSX is a successor in liability, were in attendance or on the Board of Directors of the organization each of the subject years. Dr. Frank, whose qualifications stand unchallenged by CSX, testified that a workplace of the type described by the plaintiffs and by Rollins would constitute an unsafe workplace in that visible dust from the asbestos-containing products would exceed any Occupational and Safety Health Act (OSHA) limits or TLVs that have ever existed. The fact that plaintiffs contracted asbestosis clearly establishes their exposure to a dangerous level of asbestos.

Dr. Ostrum, an expert in industrial hygiene, whose qualifications were not challenged by CSX, also concluded, after a review of

all of the above-referenced material, that plaintiffs' exposures to visible dust from the use of asbestos-containing products exceeded all TLVs that have ever existed.

Notwithstanding the above, the trial court granted CSX's motion for summary judgment because plaintiffs failed to produce reliable evidence regarding "dose." Specifically, the trial court determined that plaintiffs' failure to produce dosage evidence required summary judgment on the issues of breach of duty, foreseeability, and causation.[23] Plaintiffs contend that summary judgment was improper because the evidence was sufficient to create an issue of fact for the jury as to CSX's negligence. We agree, except as to Case No. A01A1532, Emalene Matthews Hall, individually and as executrix of the estate of Millard Mannen Hall.

Case No. A01A1532 is one of two wrongful death actions in these related cases. Plaintiff contends that her decedent died as a result of exposure to asbestos while employed by CSX during the period of 1949-1980s. Millard Hall is the only employee involved in these cases who did not contract asbestosis. There is no other evidence establishing the elements of Hall's claim. There was no affidavit directly from Millard Hall or from Dr. Ostrum. Although the case is styled Emalene Matthews Hall, individually and as executrix, we note that her complaint does not assert a cause of action in her own right, other than for wrongful death, even though she alleges that she was exposed from her husband's laundry. Any "fear of cancer" question will be addressed in that portion of this opinion. The trial court did not err in granting summary judgment in Case No. A01A1532.

The evidence was sufficient to avoid summary judgment in Case No. A01A1538, Ora Lee Gray, administratrix of the estate of Lawton Gray, by substitution, the only other case which contains a wrongful death claim. Lawton Gray was diagnosed with asbestosis and other asbestos-related diseases, which plaintiff contends led to his death. The record contains enough evidence of plaintiff's contentions to avoid summary judgment in this case. The trial court erred in granting summary judgment in this and the remaining cases for the reasons outlined herein.

First, a plaintiff must offer proof of general causation: whether exposure to a substance is capable of causing a particular injury or disease. In addition, a plaintiff must also produce evidence of specific causation: whether exposure to a substance under the circumstances of the case caused a particular plaintiff's illness or disease. While both analyses involve a question of the concentration levels of the

---

[23] The trial court did not offer an analysis, but concluded that the record did not demonstrate sufficient evidence concerning the dosage of asbestos to which plaintiffs were exposed.

toxin to which the plaintiffs were exposed, it does not necessarily follow that plaintiffs must show specific air measurement readings, or that they have not otherwise established causation.

Plaintiffs correctly argue that this is a FELA case which has a more relaxed standard of proof of causation. Plaintiffs incorrectly argue that, therefore, proof of any exposure to asbestos is enough to survive summary judgment. While it is true that the quantum of evidence necessary to satisfy the element of causation under FELA is relaxed, *Rogers*, supra at 506, plaintiffs must nevertheless present some reliable evidence on the issue. In toxic tort cases, this generally requires reliable expert testimony. See *Claar v. Burlington Northern R. Co.*[24] (FELA and exposure to chemicals); see generally *Stasior v. Nat. R. Passenger Corp.*[25] (FELA and carpal tunnel syndrome).

Where, as here, the cases undisputedly involve plaintiffs who have contracted asbestosis, which by definition, results only from an overexposure to asbestos, the proof of asbestosis conclusively establishes such overexposure. As the only purpose of the TLV is to determine at what level exposure to asbestos becomes dangerous, the existence of asbestosis renders moot the inquiry as to how many doses it takes to cause the disease. If that is not true, then the theory upon which the TLV is established is not true.

The defendant is free to argue that it was not aware of the level at which exposure, in fact, became dangerous, notwithstanding any generally accepted TLV standard. This involves a question of fact, however, and must be resolved by a jury, not as a matter of law by the court, under the facts of this case.

CSX argues that its duty was only to protect against foreseeable dangers. Under their theory, there were certain TLV standards[26] in place during the employment terms of plaintiffs, and if they cannot establish what the TLV measurement was during such time, then they cannot demonstrate that CSX breached its duty. It is ironic that CSX, who failed to follow the recommendations of the AAR in the 1930s that the air in the work environment be tested, seeks to avoid liability because the plaintiffs cannot produce the data from the very tests which CSX failed to perform. CSX contends that it had no knowledge of the dangers of asbestos until the 1980s, notwithstand-

---

[24] *Claar v. Burlington Northern R. Co.*, 29 F3d 499, 503 (9th Cir. 1994).

[25] *Stasior v. Nat. R. Passenger Corp.*, 19 FSupp.2d 835, 850-851 (N.D. Ill. 1998).

[26] The first TLV for asbestos was adopted by the American Conference of Governmental Industrial Hygienists in 1946. This limit was five million particles per cubic foot, which is approximately 20-30 fibers per cubic centimeter. This standard was subsequently lowered as follows (all measurements are in cubic centimeters): 1972 to five fibers; 1976 to two fibers; 1986 to 0.2 fibers; and 1994 to 0.1 fiber. In 1972, OSHA adopted these TLVs as the permissible exposure limits under OSHA. See affidavit of Dr. Ostrum, Record, Fulmore, Case No. A01A1530, p. 3080.

ing the fact that TLV standards were adopted in *1946*, and without acknowledging the 1935 Minutes of the Proceedings of the Fifteenth Annual Meeting of the Medical and Surgical Section 90 (AAR, Atlantic City, N.J. 1935), which counseled railroads as to the threat that the inhalation of dust — including asbestos dust — posed to the health of railroad workers and to "[h]ave frequent analyses made of the dust content of the air at different times during the work hours."

The 1958 Report of Committee on Disability & Rehabilitation of the AAR contains the following:

> The Committee has defined and described the condition of pneumoconiosis, or dust disease of the lungs, . . . and mentioned asbestosis, as [a] form of the disease most interesting to railroad surgeons. . . . An entrance to service examination is recommended particularly in those occupations where unusual quantities of . . . asbestos dust have been encountered or are contemplated as a routine occupational exposure. Such entrance to service examinations should include a complete occupational history, a careful physical examination, and an x-ray examination of the lungs recorded on films, for diagnosis and further record. It is further recommended that in periodic examinations of employees, with a history of working in noxious dust, who present symptoms suggestive of dust disease: 1) X-ray examination of the lungs should be done. 2) Change in employee's occupation should be advised or considered.

CSX contends that plaintiffs are bound by TLV standards for dangerous levels of asbestos established in 1946, while maintaining that CSX had no knowledge of the danger of asbestos until the 1980s. We note, initially, that several of the employees were working at CSX long before the standards were ever established in 1946.[27] The TLV standards presently in existence do not necessarily preclude tort liability, even assuming CSX had complied with same.

In *Doyle v. Volkswagenwerk Aktiengesellschaft*,[28] a case involving automobile safety standards, the Supreme Court of Georgia held that

---

[27] Three at >40 years: Eugene Ward, 1943-1983; Lewis H. Powell, 1940-1980; John Willie Hall, 1948-1988. Seven at >30 years: Millard Mannen Hall, 1949-1980s; William E. Jernigan, 1948-1987; Myron L. Scott, 1951-1982; Hubert Talmadge Booth, Sr., 1944-1983; Donald Alfred Payne, 1967-present; Ernest Lamar Bryant, 1950-1984; John Ray Moody, 1938-1977. Three at >20 years: Lonnie Adamson, Sr., 1941-1967; Hattie Stewart, 1978-present; Terry Ronald Harris, 1974-present. Two at >15 years: Anthony Barnes, 1966-1983; Luther Surles, 1955-1974. One at nine years: James Fleming Crews, 1950-1959. One at six years: Lawton Gray, 1950-1956.

[28] *Doyle v. Volkswagenwerk Aktiengesellschaft*, 267 Ga. 574, 577 (481 SE2d 518) (1997).

compliance with federal standards or regulations does not render a defendant immune from liability, finding that "instead of acting as an impenetrable shield from liability, compliance, more appropriately, is to be a piece of the evidentiary puzzle." As a general rule, compliance with federal standards does not, in and of itself, immunize [one] from state tort law liability. See *Burt v. Fumigation Svc. &c.*[29] See also 2 Restatement (Second) of Torts, § 288 (c), which states that "compliance with a legislative enactment or an administrative regulation does not prevent a finding of negligence where a reasonable [person] would take additional precautions."

In *Kelson v. Central of Ga. R. Co.*,[30] this court held that:

> the case law is clear that under [a] FELA action, the standards of liability for negligence are significantly broader than in ordinary common law negligence actions. Slight negligence, necessary to support [a] FELA action, is defined as a failure to exercise *great* care, and that burden of proof, obviously, is much less than the burden required to sustain recovery in ordinary negligence actions.

(Citations and punctuation omitted; emphasis in original.) Id. at 203 (1) (a).

Under the FELA, and Georgia law, it is only necessary that defendant had significantly contributed to plaintiff's injury in order to be liable therefor. In *Grassis v. Johns-Manville Corp.*[31] the court stated that:

> There is no requirement in the law that a single cause be found and proven. All that is required is that the plaintiff show that a defendant's conduct or defective product was a proximate cause of the condition, i.e., a substantial factor in bringing the condition about. Apparently, the "more likely than not" or 51% standard has in this and its companion cases been thought of as applying to asbestos exposure as the single cause of the disease, rather than to the proof of a significant factor in bringing about the disease. We do not tell a jury that a significant factor must be one that is 5%, 15%, 30% or 40%; we merely tell a jury that it must be "significant."

(Citations omitted.) Id. at 457.

---

[29] *Burt v. Fumigation Svc. &c.*, 926 FSupp. 624 (W.D. Mich. 1996).
[30] *Kelson v. Central of Ga. R. Co.*, 234 Ga. App. 200 (505 SE2d 803) (1998).
[31] *Grassis v. Johns-Manville Corp.*, 248 N.J. Super. 446 (591 A2d 671) (1991).

CSX attempts to rely upon *Figg v. CSX Transp.*,[32] a 1996 case from Chatham County Superior Court, which case was tried by then Superior Court Judge, now Court of Appeals Judge, Charles B. Mikell. The case is factually distinguishable from the subject case, in that it was a motion in limine as to the admissibility of an expert's opinion. No such motions were filed in the present case, and there was no objection to any of the expert opinions proffered by plaintiffs in opposition to the defendant's motion for summary judgment. The trial court here did not disregard any expert opinion based on any infirmity in connection therewith. There were numerous deficiencies in plaintiff's evidence noted by Judge Mikell in his ruling in *Figg*, including the filing of only excerpts of the plaintiff's deposition, thereby depriving the trial court of the opportunity to review the entire testimony, the failure of the plaintiff to file the interrogatory answers, the failure of the expert to attempt to ascertain exposure levels specific to a certain plaintiff, instead, generalizing about "these Plaintiffs," and other concerns that the court had. None of the above infirmities are present in the subject case.

In a factually and procedurally similar case, in February 2000, Judge Alaimo, United States District Court for the Southern District of Georgia, held inter alia:

> [I]t is appropriate in this context to allow the jury to infer that Defendant had been negligent — despite the absence of exposure evidence — from the fact that the Railroad failed to take samples of the air which Plaintiffs would have breathed. . . . A reasonable jury could conclude that sampling of levels of asbestos exposure was an element of the Railroad's duty to observe ordinary care, and by failing to take such samples regularly, it breached that duty. The Court need not determine whether the events giving rise to this lawsuit qualify as "extraordinary" so as to justify an inference of negligence under the doctrine of res ipsa loquitur because the failure of Defendant to monitor the level of asbestos is itself evidence that the Railroad breached its duty of care to Plaintiffs.

*Sanders v. CSX Transp.*[33]

Here, the evidence was sufficient to establish that those plaintiffs who contracted asbestosis had been exposed to a dangerous level of asbestos. This is true, without regard to the specific level of asbestos contained in their work environment. The trial court erred in

---

[32] *Figg v. CSX Transp.*, Civil Action No. CV96-0495-MI (1996).
[33] *Sanders v. CSX Transp.*, Civil Action Nos. CV590-209, CV590-216, CV591-165 (2000).

granting summary judgment based on a failure to prove the dose exposure in all cases except Case No. A01A1532, for the reasons outlined herein.

2. We next address plaintiffs' claim that the trial court erred by failing to set aside summary judgment on grounds that plaintiffs were not allowed the statutory 30-day period to respond to CSX's supplemental summary judgment filings. We disagree.

CSX filed its motion for summary judgment and supporting material on May 10, 2000; a hearing was scheduled for June 14. Plaintiffs filed opposition papers on June 7, and CSX filed a supplemental brief on June 13. The trial court heard oral argument on June 14 and ordered from the bench that plaintiffs would have the opportunity to supplement and CSX would then have an opportunity to respond, before the court decided the motion. Pursuant to this order, plaintiffs filed a supplemental brief on June 23, and with leave of the court, CSX filed its second supplemental brief on August 15.[34] On August 28, 2000, the trial court awarded summary judgment in favor of CSX.

Plaintiffs filed their motion to set aside summary judgment, objecting to the exhibits filed by CSX on August 15. On September 15, 2000, the trial court denied plaintiffs' motion, finding that plaintiffs acquiesced to the post-hearing briefing schedule and that the affidavits that plaintiffs objected to were not dispositive to the court's ruling.

Plaintiffs claim that OCGA § 9-11-56 (c) requires that a party be given 30 days to consider and respond to materials submitted in support of a motion for summary judgment. Thus, plaintiffs claim that because the trial court did not allow them the full 30 days to respond to CSX's August 15, 2000 submission (i.e., through September 14, 2000), the trial court's action violated OCGA § 9-11-56 (c).

OCGA § 9-11-56 (c) requires that only supporting material which is "on file" at least 30 days before the hearing shall be considered for the movant. *Bonds v. John Wieland Homes;*[35] *Gunter v. Hamilton Bank &c.*[36] The parties, however, may waive the 30-day rule by acquiescence. *Gunter*, supra at 381. Here, the parties agreed at the June 14 summary judgment hearing that plaintiffs would have the opportunity to supplement and CSX the opportunity to respond. Both parties supplemented with additional briefs and evidence. The record supports the trial court's conclusion that plaintiffs waived the 30-day

---

[34] CSX filed a second supplemental brief in support of summary judgment, together with the affidavits of Larry Lieukenon, Francis Weir, Richard Bussard, and Mark Badders. CSX also filed the deposition testimony of Dr. Frank.

[35] *Bonds v. John Wieland Homes*, 177 Ga. App. 254, 255 (339 SE2d 318) (1985).

[36] *Gunter v. Hamilton Bank &c.*, 201 Ga. App. 379, 380 (411 SE2d 115) (1991).

rule of OCGA § 9-11-56 (c). This enumeration of error is without merit.

3. Lastly, we address plaintiffs' contention that the trial court erred by granting CSX's motion in limine to exclude evidence of fear of cancer. Under Georgia law, and the United States Supreme Court's ruling in *Metro-North Commuter R. Co. v. Buckley,* supra, a plaintiff may not recover for emotional distress arising from a fear of contracting a disease until he begins to manifest symptoms of the disease. With the exception of Lawton Gray, who died of cancer, no other living plaintiff has evidence of cancer. This issue is moot as to Millard Mannen Hall, in Case No. A01A1532, as summary judgment has properly been granted in that wrongful death action. Inasmuch as the Lawton Gray wrongful death case is still pending based upon our reversal of the trial court's grant of summary judgment in all cases except Case No. A01A1532 (Hall), we affirm the trial court's ruling on the motion in limine concerning fear of cancer evidence, except in Case No. A01A1538 (Gray), in which we reverse the trial court's ruling.

*Judgment affirmed in Case No. A01A1532. Divisions 2 and 3 affirmed and Division 1 reversed in Case Nos. A01A1530, A01A1531, A01A1533, A01A1534, A01A1535, A01A1536, A01A1537, A01A1539, A01A1540, A01A1541, A01A1542, A01A1543, A01A1544, A01A1545, A01A1546 and A01A1547. Division 2 affirmed and Divisions 1 and 3 reversed in Case No. A01A1538. Pope, P. J., and Mikell, J., concur.*

DECIDED NOVEMBER 21, 2001 —
RECONSIDERATION DENIED DECEMBER 13, 2001 —

*Lane & Gossett, Roger B. Lane, Mark J. Bujold,* for appellants.
*Jordan, Bristol & Moses, Randall A. Jordan, Mary H. Moses,* for appellee.
*Nelson, Mullins, Riley & Scarborough, Richard K. Hines, Richard B. North, Jr.,* amici curiae.