A98A1738. KELSON v. CENTRAL OF GEORGIA RAILROAD COMPANY.
(505 SE2d 803)

ELDRIDGE, Judge.

Plaintiff-appellant Philip Kelson appeals from the grant of summary judgment to defendant-appellee Central of Georgia Railroad Company ("Central Railroad") on claims he pursued under the Federal Employers' Liability Act ("FELA") and the Federal Safety Appliance Act ("FSAA"). We affirm.

The evidence of record includes affidavits of Central Railroad employees, accompanying business records, photographs, and Kel-

son's affidavit and deposition. Viewing such evidence in Kelson's favor, it shows that, in 1995, Kelson was 55 years old and had been an employee of Central Railroad for approximately 35 years. He worked as a conductor/foreman since 1968 and was responsible for overseeing coupling and switching operations.

On March 9, 1995, the train on which Kelson was working traveled to Dougherty County to pick up three tank cars from Bob's Candy Company. As the train maneuvered to the point where the tank cars were waiting, Kelson rode on the side ladder of the last train car, i.e., a refrigerated boxcar that was to be coupled to the tank cars. He deposed that he was not supposed to ride on the end ladder of the boxcar because "[i]t's against the rule[s]" of Central Railroad to ride on the end ladder during a coupling (or "shove") operation. Kelson also stated that, before the train began moving, he had turned off the boxcar's hand brake. During the coupling operation, Kelson was unable to see the engineer operating the train and communicated with him through the use of a walkie-talkie. As the train backed up toward the tank cars, Kelson communicated the distance between the cars to the engineer.

When the cars were "extremely close to coupling," i.e., between one and five feet apart, Kelson stated that he moved from the side ladder to the end ladder of the boxcar, *placing himself directly between the coupling train cars*. In the process, Kelson moved both of his feet onto the end ladder, but his right hand still was holding onto the side ladder; Kelson's left hand held the walkie-talkie microphone. Kelson admitted that, within seconds prior to the imminent coupling operation, he let go of the side ladder with his right hand with the intention of grabbing the end ladder with the same hand. Unfortunately, he missed the ladder and began to fall backward. According to Kelson's affidavit and deposition testimony, that caused him to jump onto the sliding center sill cushion between the trains at the very moment the trains were coupling. His left foot was caught between the trains and crushed. Kelson tried to use his walkie-talkie to tell the engineer to move the train away from the tank cars, but he mistakenly directed the engineer to move closer, thereby increasing the pressure on his foot. After Kelson dislodged his foot, he was treated at the scene and then transported by ambulance to a regional hospital.

Two employees of Central Railroad inspected the refrigerated boxcar and the adjoining tank car within hours of the incident and found no defects or missing equipment. According to their affidavits, they examined the "sliding sill . . . and found no defects," and determined that the "brakes, ladders, grab irons, hand holds, and sill steps . . . were found to be in good condition with no foreign substance found thereon." They also determined that the boxcar on

which Kelson was riding had a high hand brake which was in good working order.

On May 11, 1995, Kelson filed suit against Central Railroad in the Superior Court of Dougherty County under FELA, 45 USC § 51 et seq., asserting that Central Railroad's negligence caused his injuries. In addition, the complaint claimed that the Central Railroad violated the FSAA, 49 USC § 20301 et seq., by failing to ensure that the boxcar was equipped with statutorily mandated safety equipment which caused, in whole or in part, Kelson's injuries. On June 28, 1996, Central Railroad moved for summary judgment, asserting that Kelson's negligence in moving to the end of the boxcar immediately prior to coupling was the sole proximate cause of his injuries, thereby relieving Central Railroad of liability under both the FELA and FSAA. The trial court agreed and granted the motion on March 23, 1998. It is from the trial court's order that Kelson appeals. *Held*:

1. In his first enumeration, Kelson asserts that the trial court erred in granting summary judgment to Central Railroad, alleging that a factual issue existed regarding whether the railroad was negligent in failing to provide a reasonably safe place to work, so that it was liable under FELA. Under FELA, the railroad company is liable to any employee who suffers an injury "resulting in whole *or in part* from the negligence of . . . such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars [or] engines. . . ." 45 USC § 51; see also 49 USC § 20301 et seq.[1] Further, "the fact that the employee may have been guilty of contributory negligence shall not bar a recovery, but the damages shall be diminished by the jury in proportion to the amount of negligence attributable to [the] employee." 45 USC § 53. However, "[i]f a violation of the [FSAA] results in injury to a railroad employee, the negligence of the employee is not relevant and does not reduce his recovery *unless his negligence can be said to be the sole cause of his injury.*" (Citation omitted; emphasis supplied.) *Central of Ga. R. Co. v. Mock*, 231 Ga. App. 586, 588 (2) (499 SE2d 673) (1998). See also 45 USC § 53; *Beimert v. Burlington Northern*, 726 F2d 412, 414, n. 3 (8th Cir. 1984).

---

[1] FELA also embraces claims of an employee based upon a violation of the FSAA. *Beimert v. Burlington Northern*, 726 F2d 412, 414, n. 1 (8th Cir. 1984), cert. denied, 467 U. S. 1216 (104 SC 2659, 81 LE2d 365) (1984). Such violation subjects the employer to strict liability for injuries caused by the violation. Id.; *Lisek v. Norfolk &c. R. Co.*, 30 F3d 823, 825-826 (7th Cir. 1994), cert. denied, 513 U. S. 1112 (115 SC 904, 130 LE2d 787) (1995); *Jordan v. Southern R. Co.*, 970 F2d 1350, 1352 (4th Cir. 1992); *Green v. River Terminal R. Co.*, 763 F2d 805 (6th Cir. 1985). Federal regulations adopted pursuant to the FSAA, which specifically list required equipment, have the same force and effect as the law. 45 USC § 54a; *Atchison &c. R. Co. v. Scarlett*, 300 U. S. 471, 474 (57 SC 541, 81 LE 748) (1937); see also *Central of Ga. R. Co. v. Mock*, 231 Ga. App. 586 (499 SE2d 673) (1998).

(a) "To prevail on [a] FELA [negligence] claim, a plaintiff must prove the traditional common law elements of negligence: duty, breach, foreseeability, and causation." (Citations and punctuation omitted.) *Bagley v. CSX Transp.*, 219 Ga. App. 544, 545 (465 SE2d 706) (1995). See also *Adams v. CSX Transp.*, 899 F2d 536, 539 (6th Cir. 1990); *Green v. River Terminal R. Co.*, 763 F2d 805, 808 (6th Cir. 1985). "The basis of [the employer's] liability is [its] negligence, not the fact that injuries occur." (Citations and punctuation omitted.) *Consolidated R. Corp. v. Gottshall*, 512 U. S. 532 (114 SC 2396, 129 LE2d 427) (1994). See also *Southern R. Co. v. Mays*, 63 SE2d 720, 724 (Va. 1951) ("negligence on the part of [the] defendant may not be presumed or inferred from mere proof of an accident"). The FELA is not a no-fault workers' compensation statute, nor does it make the employer an insurer of its employees. *Consolidated R. Corp. v. Gottshall*, supra; *Inman v. Baltimore &c. R. Co.*, 361 U. S. 138, 140 (80 SC 242, 4 LE2d 198) (1959); *Jordan v. Southern R. Co.*, 970 F2d 1350, 1352 (4th Cir. 1992); *Radford v. Seaboard &c. R. Co.*, 122 Ga. App. 763, 764 (178 SE2d 774) (1970).

However, "[t]he case law is clear that under an FELA action, the standards of liability for negligence are significantly broader than in ordinary common law negligence actions. [Cit.]" *Duron v. Western R. Builders Corp.*, 856 FSupp. 1538, 1540 (D. N. M. 1994). "Slight negligence, necessary to support an FELA action, is defined as 'a failure to exercise *great* care,' and that burden of proof, obviously, is much less than the burden required to sustain recovery in ordinary negligence actions." (Citation omitted; emphasis in original.) *Boeing Co. v. Shipman*, 411 F2d 365, 371 (4) (5th Cir. 1969). See also *Ackley v. Chicago &c. Transp. Co.*, 820 F2d 263, 267 (3) (8th Cir. 1987). "The FELA is meant to provide a broad remedial framework for railroad workers and, in light of that purpose, is to be liberally construed in their favor. [Cit.]" *Lisek v. Norfolk &c. R. Co.*, 30 F3d 823, 831 (7) (7th Cir. 1994). See also *Atchison &c. R. Co. v. Buell*, 480 U. S. 557, 562 (107 SC 1410, 94 LE2d 563) (1987). "In other words, 'trial by jury is part of the remedy' in FELA cases." (Citations omitted.) *Boeing Co. v. Shipman*, supra at 371 (5). See also *Rogers v. Missouri Pacific R. Co.*, 352 U. S. 500, 508 (77 SC 443, 1 LE2d 493) (1957).

(b) Even so, as part of his prima facie case, Kelson was required to show not only that Central Railroad was negligent, but that such negligence was the proximate cause of his injuries. *Powell v. Waters*, 55 Ga. App. 307, 314 (190 SE 615) (1937); see also *Brady v. Southern R. Co.*, 320 U. S. 476, 483-484 (64 SC 232, 88 LE 239) (1943); *Green v. River Terminal R. Co.*, supra at 810; *Wolfe v. Henwood*, 162 F2d 998, 1001 (8th Cir. 1947); *Black v. Ga. Southern &c. R. Co.*, 202 Ga. App. 805, 806 (415 SE2d 705) (1992); *Radford v. Seaboard &c. R. Co.*, supra at 764. "The test for minimally adequate proof of causation is

'whether the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury.' But although a plaintiff need not make a showing that the employer's negligence was the *sole* cause, there must be a sufficient showing (i.e., *more than a possibility*) that *a* causal relation existed." (Citation omitted; emphasis in original and supplied.) *Moody v. Maine Central R. Co.*, 823 F2d 693, 695 (1st Cir. 1987). See also *Rogers v. Missouri Pacific R. Co.*, supra at 508; *Boeing Co. v. Shipman*, supra at 374-375 (holding that a "mere scintilla of evidence" does not create a jury question); *CSX Transp. v. Monhollen*, 229 Ga. App. 516, 522 (3) (494 SE2d 202) (1997).

On a defense motion for summary judgment, if the defendant is able to demonstrate the absence of any evidence supporting an essential element of the plaintiff's case, or if it affirmatively disproves an element, the plaintiff may not rest on mere assertions in his pleadings, but must present affirmative evidence which creates a jury issue on this element or suffer summary judgment. OCGA § 9-11-56 (c), (e); *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991); see also *Celotex Corp. v. Catrett*, 477 U. S. 317, 322-324 (106 SC 2548, 91 LE2d 265) (1986). While "[t]he proximate cause of an injury is ordinarily a question for the jury[,] where it appears from the undisputed facts that the act or negligence complained of is not the efficient proximate cause of the injury, then the question is properly one for determination by the court." *Powell v. Waters*, supra at 311. Since this is a case "where fair-minded jurors cannot honestly differ whether fault of the employer played any part in the employee's injury[,]" summary judgment was appropriate. *Rogers v. Missouri Pacific R. Co.*, supra at 510; *Walden v. Illinois Central Gulf R.*, 975 F2d 361, 364 (7th Cir. 1992).

(c) In support of his FELA claim, Kelson relied upon his February 1996 deposition and his July 1996 affidavit to demonstrate that a safety hazard existed that was caused by negligence which was attributable to Central Railroad. According to Kelson, the ground around the railroad tracks near Bob's Candy Company was covered with corn syrup which had been spilled from the tanks and which caused the ground to be slippery, so that it was dangerous for him to get off the train and walk along the tracks. Notably, Kelson did not make such assertion in his pleadings, relying instead on his claim that the boxcar on which he was working had defective or missing safety equipment. In its motion for summary judgment, Central Railroad denied the presence of syrup on the ground and presented photographs of the area taken within hours of the incident.

However, because of this alleged hazard, Kelson asserts that it was necessary for him to ride on the side ladder of the train cars during coupling and to cross over between the train cars in order to get

to the loading dock after the coupling operation was completed. Kelson pointed to Central Railroad's Safety Rule 1070, which states that "[w]hen getting on or off equipment, employees must: [s]elect a location that is free of obstructions . . . or any other underfoot condition that could cause tripping or stumbling. . . . Employees must not attempt to get on or off moving equipment when ground or clearance conditions will compromise their personal safety." Accordingly, Kelson contends that the presence of syrup on the ground created an unsafe workplace, so that the railroad company was liable under FELA for injuries he claims resulted when he fell from the train's end ladder.

Even if Kelson's allegations of the presence of syrup are given all favorable inferences, his argument as to what caused the incident is contradicted by his sworn affidavit, in which he made the following statement: "When the cars were extremely close to coupling, between one and five feet, I told the engineer that will do. It was at this time that I swung around from the ladder on the side of the box car to the ladder on the end of the box car. The train was traveling at less than one mile per hour. *I lost my grip immediately before the cars coupled and was forced to jump onto the center sill cushion.* Immediately after I landed on the center sill cushion, the cars coupled, crushing my left foot." (Emphasis supplied.) This admission is reiterated in Kelson's deposition, in which he stated that he let go of the side ladder with the intention of grabbing the end ladder, *"[a]nd I missed. And that made me jump. When I missed and went to going over, I jumped here [on the center sill cushion]."* (Emphasis supplied.) Such admissions clearly show that Kelson's injuries were the *direct result* of his voluntary and independent decision to move between the moving cars immediately prior to coupling and had nothing to do with the alleged presence of syrup on the ground.

In addition, during his deposition testimony, Kelson admitted that he was aware that Central Railroad's safety rules prohibited employees from riding on the end ladder of a car during a coupling operation and that employees had to ride on the side ladders.[2] See Safety Rule 1080. Kelson also stated that he was aware of the possibility that placing one's foot on the center sill during coupling could cause a crush injury.[3] Kelson admitted that he could have waited on

---

[2] Kelson asserts that it was the custom of employees to ride the side ladder to the loading dock because of the syrup and, because Central Railroad was aware of the practice, it should be prevented from asserting the defense that such practice violated its safety rules. See *Hatfield v. Thompson*, 252 SW2d 534, 541 (5) (Mo. 1952); see also *Moore v. St. Joseph &c. R. Co.*, 186 SW 1035, 1037 (3) (Mo. 1916). However, Kelson presented no evidence that this alleged custom extended to the practice of climbing between train cars during coupling, so that the rule of *Hatfield v. Thompson,* supra, does not apply.

[3] However, in so noting, we recognize that, in FELA actions, the defense of assumption

the side ladder until the coupling operation was completed. Further, it is clear that, had he stayed on the side ladder, Kelson's crush injury would not have occurred.

Therefore, even if this Court accepts Kelson's assertions that the syrup was present; that such syrup was a hazard resulting from negligence; that such negligence was imputable to the Railroad Company; and that such syrup created an unsafe workplace, the evidence disproves that such negligence was the *proximate cause* of Kelson's injuries. See *Lisek v. Norfolk &c. R. Co.*, supra at 825 (on a motion for summary judgment, all factual inferences are resolved in favor of the non-movant); *Wolfe v. Henwood*, supra at 999 (1). Negligence cannot be made "the basis of an action because it furnished the condition and gave rise to the occasion by which the injury was made possible, where there intervened *an unrelated and efficient cause of the injury*, even though such injury would not have happened but for such condition or occasion." (Citation and punctuation omitted; emphasis supplied.) *Powell v. Waters*, supra at 314. In other words, even if the presence of the syrup caused Kelson to ride on the side ladder during the coupling operation, it did not cause him to move to the end of the train, i.e., between the moving cars, prior to the completion of the coupling.

This case is strikingly similar to *Duron v. Western R. Builders Corp.*, supra. In *Duron*, a railroad employee with eight months experience was injured when he placed his hand on the knuckle of a railroad car while the train was moving approximately 1.5 mph. Id. at 1542. The plaintiff admitted that he knew that stepping between railroad cars or placing any part of one's body near the coupling device while the train was moving was dangerous and prohibited by the railroad company's safety rules. Id. The federal court found that the plaintiff's actions were the sole cause of his injuries and that the defendant railroad company did not contribute in whole or in part to the injury. Id. at 1540. Accordingly, the court granted the defendant railroad company's motion for summary judgment. As in *Duron*, the plaintiff in this case, Kelson, knew that climbing between the cars during coupling was dangerous and prohibited by Central Railroad's safety rules.

Further, although Kelson asserts that it was necessary for him to ride on the train in order to avoid the alleged presence of syrup on the ground, he has made no showing of necessity or emergency that forced him to make the poor choice of climbing between the cars during coupling. See *Bass v. Seaboard Air Line R. Co.*, 205 Ga. 458, 472-473 (53 SE2d 895) (1949) (railroad employee injured his back when

---

of the risks of employment has been abrogated. 45 USC § 54; see also 49 USC § 20304.

the railroad car's hand brakes failed and the resultant emergency forced him to quickly dismount the car); see also *New York Central R. Co. v. Brown*, 63 F2d 657 (6th Cir. 1933), cert. denied, 290 U. S. 634 (54 SC 52, 78 LE 551) (1933); *Black v. Ga. Southern &c. R. Co.*, supra at 808; *Blanchard v. Posey*, 81 Ga. App. 631, 632 (2) (59 SE2d 530) (1950).

Accordingly, there is no causal connection between the presence of the syrup and Kelson's independent, inexplicable, and ill-conceived decision to cross over to the end ladder of the train *while the train was still moving*, when he could have waited *mere seconds* to perform the same maneuver *after* the train was coupled and stopped, thereby *eliminating the possibility of a crush injury*. See *Southern R. Co. v. Mays*, supra at 726 (16); see also *Wolfe v. Henwood*, supra at 1001. Therefore, any alleged negligence by the railroad company in allowing the syrup to remain on the ground was not the proximate cause of Kelson's subsequent injury.[4] The trial court did not err in finding, as a matter of law, that Kelson's act in moving to the end of the boxcar while the train was still in motion and, in the process, letting go of the train with both hands, was the sole proximate cause of his injury.

2. In his next enumeration of error, Kelson claims that a "weak spring" in the sliding sill mechanism of the boxcar contributed to his injuries because "that's what caused [the sliding sill] to catch my foot." The sliding sill cushioning mechanism acts as a shock absorber for the trains during coupling operations and at any other time the cars make contact. Kelson asserts that Central Railroad negligently required him to work on a railroad car that was defective; he brought this claim under the negligence provisions of FELA, not the strict liability provisions of the FSAA.

(a) In making this claim, Kelson relies solely on his deposition testimony that, in his opinion, the spring was weak because it allegedly allowed the drawhead on the sliding center sill to slide farther than necessary during the coupling operation. Notably, Kelson failed to assert any such defect in the spring in his complaint, his affidavit, or his response to Central Railroad's motion for summary judgment.

We find that Kelson's mere conclusory allegations of negligence by Central Railroad which caused him to be assigned to a boxcar with an allegedly defective sill cushion in the coupling mechanism are insufficient to withstand Central Railroad's motion for summary judgment. See *Lau's Corp. v. Haskins*, supra. The motion was sup-

---

[4] Notably, Kelson also argues that the lack of adequate clearance on the dock side of the train also forced him to ride on the side of the train. However, under the same analysis as applied to the alleged presence of syrup, Kelson failed to establish a causal link between the alleged lack of clearance and his injury.

ported by two affidavits of long-standing railroad maintenance employees that evidenced an inspection two and one-half hours after the incident which found no defects in the coupling mechanism. Kelson's conclusory allegations are "unsupported by any factual assertions suggesting that [the alleged defect] might involve negligence" by Central Railroad. *Lisek v. Norfolk &c. R. Co.*, supra at 833-834 (11). See also *Hurley v. Patapsco & Back Rivers R. Co.*, 888 F2d 327, 329 (4th Cir. 1989).

Further, Kelson presented no evidence that Central Railroad knowingly utilized an allegedly defective boxcar. "Without notice . . . as to possibly dangerous conditions not evident to a layperson, [Central Railroad] had no opportunity to correct these conditions and cannot be found negligent." *Hurley v. Patapsco & Back Rivers R. Co.*, supra at 329. Accordingly, the trial court did not err in granting summary judgment on this issue.

(b) However, even if Kelson's assertion that Central Railroad negligently utilized a boxcar with a defective spring is true, it does not establish causation without evidence of some causal link between the spring and his injury. For example, in *McCalmont v. Pennsylvania R. Co.*, 283 F. 736, hn. 3 (6th Cir. 1922), cert. denied, 260 U. S. 751 (43 SC 250, 67 LE 495) (1923), a railroad employee broke company rules when he failed to put up a flag to signal that he was working between railroad cars to repair a defective coupler. He was killed when the cars collided after the shunting of another car on the tracks. The court held that the proximate cause of the collision and of the injury was the employee's failure to set out the flag, and that the defective coupler was not a cause, but only a condition of the injury, and did not establish the employer's negligence under the FELA or FSAA. 283 F. at 741 (3).

Further, in *Powell v. Waters*, supra, a railroad employee died after he overexerted himself in an effort to repair a faulty air-brake system. In reversing the trial court's denial of the defendant railroad company's general demurrer, this Court held that "an employee can not recover under the [FELA or FSAA] if the failure to comply with [the FSAA's] requirements is not a proximate cause of the accident which results in his injury, but merely creates an *incidental condition or situation* in which the accident, *otherwise caused*, results in such injury." (Punctuation omitted; emphasis supplied.) Id. at 315. See also *Davis v. Wolfe*, 263 U. S. 239, 243 (44 SC 64, 68 LE 284) (1923); *Green v. River Terminal R. Co.*, supra at 810 (7). Accordingly, there was no error in the trial court's grant of summary judgment to Central Railroad on the issue of its liability for negligently utilizing an allegedly defective boxcar.

3. In his third enumeration of error, Kelson asserts that the trial court erred in granting summary judgment when factual issues

existed regarding whether Central Railroad was negligent in failing to provide their employees with a boxcar which was equipped with an end platform.[5] Kelson asserted in his deposition that the end platform was missing on the boxcar in this case, and that the presence of such end platform may have prevented the incident which resulted in his injuries. He claimed that he would "have stepped on it and would have stayed there until the coupling" and could have used it to reach the loading dock instead of crossing over in the manner that caused his injuries.

However, when Kelson was asked during the same deposition whether any equipment was "left off" the train cars or contributed in any way to his injuries, Kelson said no, with the exception of the sliding sill spring. See Division 2, supra; see also footnote 6, infra. Further, Kelson admitted that, even if the end platform had been in place, he would not have stepped onto the platform until *after* the train cars had coupled.

As Kelson offers no explanation for the contradictions in the deposition testimony, the statements must be construed against him. *Prophecy Corp. v. Charles Rossignol, Inc.*, 256 Ga. 27 (343 SE2d 680) (1986); see also *Shiver v. Norfolk-Southern R. Co.*, 269 Ga. 168, 169-170 (496 SE2d 903) (1998). Accordingly, it is unnecessary to determine whether Central Railroad's alleged failure to provide a boxcar with an end platform was negligence, as Kelson's testimony has shown that the absence of the end platform did not contribute in any way to his injuries.

4. Kelson also asserts that, even if Central Railroad could not be found to be negligent in its individual acts, its actions taken as a whole showed a pattern of neglect for which it could be held liable. See *Union Pacific R. Co. v. Hadley*, 246 U. S. 330, 332 (38 SC 318, 62 LE 751) (1918). However, Kelson again misses the mark. Even if this Court agreed that Central Railroad's cumulative actions constituted a pattern of neglect, Kelson has failed to show how this negligence caused his injuries.

To reiterate our holding in this case, Kelson's voluntary and deliberate action in climbing between the moving train cars and, in the process, letting go of the handgrip, when he could have waited *mere seconds* for the coupling to be complete, was so unreasonable, unnecessary, and dangerous that the trial court was justified in finding that such action constituted the sole, proximate cause of his injuries. Therefore, Central Railroad was not liable under the negligence

---

[5] Although Kelson expressly notes in his appellate brief that he is not asserting that the lack of the end platform is a violation of the FSAA, this Court recognizes that the FSAA does not require an end platform on the boxcar at issue in this case. 49 CFR Ch. II, § 231.1 (1997); see also Division 5, infra.

provisions of the FELA, and summary judgment was appropriate.

5. Finally, Kelson asserts that the trial court erred in granting summary judgment because a jury issue existed as to whether Central Railroad violated certain FSAA provisions. However, the only violation alleged by Kelson on appeal was the absence of an end platform. This Court previously determined that Kelson was unable to present any evidence that Central Railroad was negligent in failing to provide a boxcar with an end platform. See Division 3, supra. However, Kelson apparently attempts to raise the absence of an end platform as an FSAA violation, also.[6]

The FSAA is a strict liability statute, i.e., no showing of negligence is required to establish liability. *Lisek v. Norfolk &c. R. Co.*, supra at 825-826. However, a plaintiff must still show that a violation of the statute caused his injuries in order to recover. *Rogers v. Missouri Pacific R. Co.*, supra at 507; *Walden v. Illinois Central Gulf R.*, supra at 364 (1).

Further, the FSAA "creates strict liability for malfunctions in specific equipment, and no other device, however necessary for safety, falls within its reach. An employee injured by any non-specified appliance would have to prove negligence on the part of the railroad under the general FELA standard." *Jordan v. Southern R. Co.*, supra at 1352-1353 (4). "[W]hether a particular device is a 'safety appliance' [under the FSAA] is a question of law." Id. at 1352 (3).

In this case, the trial court expressly found that the boxcar at issue in this case was subject to the safety requirements as outlined in 49 CFR Ch. II, § 231.1 (1997). The undisputed evidence shows that the boxcar was placed into service in 1965, is fifteen feet and one inch tall, and does not have roof hatches. Id.; see also 49 CFR Ch. II, §§ 231.24 (1997) (regulating boxcars over sixteen feet ten inches tall); 231.27 (i) (1) (1997) (regulating boxcars without roof hatches built on or before April 1, 1966, or placed in service before October 1, 1966). There was no error in the trial court's application of the § 231.1 requirements. Further, as an end platform is not required under § 231.1, the trial court properly granted summary judgment to Central Railroad on the issue of its alleged FSAA violation.

*Judgment affirmed. McMurray, P. J., and Blackburn, J., concur.*

---

[6] In his complaint, Kelson also asserted that the boxcar's grab irons and sill steps were defective "in that they were not properly affixed to the car and in fact were non-existent." Even though such assertions are not raised in this appeal, we note that Kelson's admissions in his deposition affirmatively disprove any such defects, so that summary judgment was proper on these allegations. See Division 3, supra; see also *Lau's Corp. v. Haskins*, supra.

DECIDED AUGUST 17, 1998 —
RECONSIDERATION DENIED SEPTEMBER 2, 1998.

*Brimberry, Kaplan & Brimberry, Jerry W. Brimberry, Burge & Wettermark, James R. Holland II,* for appellant.

*Watson, Spence, Lowe & Chambless, Stephen S. Goss,* for appellee.