## A06A1826. GEORGIA SOUTHERN & FLORIDA RAILWAY COMPANY v. PETERS.
### (643 SE2d 786)

ELLINGTON, Judge.

In this granted interlocutory appeal, Georgia Southern & Florida Railway Company ("the railroad") appeals from the order of the Bibb County Superior Court denying its motion for summary judgment in a personal injury action brought by one of its employees, Wayne Peters, under the Federal Employers' Liability Act ("FELA").[1] Peters sued the railroad after a robber hit him in the head with a baseball bat when Peters entered a convenience store during working hours. The railroad contends that the trial court applied an incorrect standard of

---

[1] 45 USC § 51 et seq., which governs the liability of railroads to employees for injuries caused by negligence.

care and that it was entitled to summary judgment because the criminal assault of Peters on a third party's property was not reasonably foreseeable. For the reasons that follow, we reverse the superior court's order and enter judgment in favor of the railroad.

> On appeal from the grant of summary judgment [the appellate court] conducts a de novo review of the evidence to determine whether there is a genuine issue of material fact and whether the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law.

(Citation and punctuation omitted.) *Munroe v. Universal Health Svcs.*, 277 Ga. 861, 864-865 (2) (596 SE2d 604) (2004).

Viewed in the light most favorable to Peters, the record contains evidence of the following facts. On November 10, 2000, Peters was hit on the head with a baseball bat when he entered Bennett's Grocery during a robbery. Bennett's was a convenience store located 25 to 50 yards from train tracks used by the railroad in Adel. It is undisputed that Bennett's was not located on the railroad's property or right of way.

Peters filed suit against the railroad alleging that it was negligent for failing to provide him "with a reasonably safe place to work," and failing to provide him "with a safe place to conduct necessary work related meetings." After conducting discovery, the railroad moved for summary judgment on the grounds that it was "not liable under FELA for the unforeseeable and unpreventable criminal assault upon its employee by a third party assailant."[2]

At the time of his injury, Peters worked as a train conductor and traveled between Adel and Tifton on a train that performed a function called "switching industries" for customers that had full or empty train cars. Peters reported for work at the train depot in Adel and was responsible for calling the customers each morning and coordinating the switching of cars.

Because another railway company, Georgia & Florida ("G & F"), also used the same track, Peters also coordinated use of the track with G & F's two-man crew. He usually met with G & F's crew in the morning at the Adel depot. Three days a week, Peters stopped his train and met G & F's crew on the track that ran behind Bennett's, where they discussed how they would coordinate their use of the track while standing near the tracks. Frequently, they had a cup of coffee

---

[2] The railroad did not move for summary judgment on the ground that Peters was acting outside the scope of employment at the time he was injured.

at Bennett's and continued their coordination discussions inside Bennett's. Sometimes, the crew ate lunch there. Bennett's was located on West Ninth Street.

As the conductor, Peters made the decision to stop his train on the track behind Bennett's. Peters chose to meet with G & F's crew at this location because their trains would not block any railroad crossings and cause traffic congestion. He was never instructed by a railroad supervisor to stop there. When asked if his supervisors knew that he stopped there for meetings, Peters replied, "I can't say definitely. I'm sure they did, but to say, yeah they did, I couldn't say truthfully." The railroad's trainmaster for Adel testified that he did not know that Peters would meet with G & F's crew inside Bennett's.

The engineer for the train on which Peters worked testified that on the day of Peters' attack, they were not planning to meet G & F's crew at Bennett's and that he did not see the other crew there. They stopped at Bennett's to grab a quick lunch and it was Peters' idea to do so. An employee that visited Peters in the hospital after he was assaulted testified that Peters told him that they had stopped at Bennett's that day "to get something to eat."

Peters testified that he has no specific recollection of his attack or why he went into Bennett's that day. However, based on his normal routine, he believes that he decided to stop the train behind Bennett's for the purpose of meeting G & F's crew to coordinate their use of the single track. However, he acknowledged that he "might be dead wrong because, like I say, when I woke up [after the attack], I don't remember nothing about none of it."

Peters also testified that before his attack, he was not aware of any history of crime or other problems at Bennett's; he would not have stopped the train near Bennett's if he thought there was any risk of a criminal attack. His co-workers also testified that they were not aware of any problems with crime at Bennett's or in the surrounding area.

With regard to incidents of crime in general, Peters testified that he "complained on numerous occasions about the stuff going on around Adel . . . down there at Ninth Street" to the railroad police. Approximately once a week, people would jump on boxcars and teenagers would "threaten" and "cuss" at him. Although "some punk" threatened to kick his "tail," Peters "knew that wasn't going to happen." According to Peters, the railroad police did nothing in response to his complaints. He acknowledged he knew of no previous incidents of physical violence in the area.

The railroad's trainmaster in Adel acknowledged that the crew had mentioned that they were sometimes cursed when the train blocked a railroad crossing in the Ninth Street area. He also recalled

being told once or twice that trespassers had jumped up on boxcars when a train blocked an intersection.

The railroad's police records show that Peters complained about several juveniles trespassing on railroad property near West Seventh Street in Adel in January 2000. Peters reported that when he asked them to leave, one remained and cursed him. One suspect was arrested by the City of Adel Police Department. In April 2000, six months before his attack, Peters reported finding a trespasser riding inside a railroad car in Adel near Fourth Street. The City of Adel Police Department arrested the trespasser. These incidents "were not near Bennett's Grocery or the area surrounding it." One was approximately one-half mile away, and the other was two-thirds of a mile away.

The railroad's manager of facility security and crime analysis at the time of Peters' injury, Mark Sinquefield, testified that it is very difficult to provide security for miles and miles of track in remote locations. He testified that the incident with Peters was unique as most assaults on railroad employees consist of an object being thrown at a train. He also acknowledged that irate motorists sometimes curse and threaten an engineer when a train is blocking a railroad crossing.

Sinquefield also acknowledged that if the railroad had been given notice more than once that threats of physical violence were being made against railroad employees while they were on the ground, the railroad police should have investigated the area where the employees were threatened.

According to Sinquefield, the railroad's records contained no record of threats against Peters or any other railroad employee in the Adel area. As a result, the railroad police did not investigate the Ninth Street area in Adel. Sinquefield testified that there was nothing the railroad could have done to prevent Peters' injury short of providing him with an armed escort.

Peters opposed the railroad's motion for summary judgment with numerous affidavits aimed at proving that Bennett's was an unsafe location for railroad work meetings. In one, a security expert opined that the railroad should have known that its crew was using Bennett's as a meeting place, that it should have assessed the safety of that location, that it should have known that a convenience store like Bennett's posed a heightened risk of violent crime because it was close to a high crime, drug trafficking area, and that it should have suggested a safer, alternative meeting place.

A former employee of Bennett's averred that 11-12 years before the attack on Peters, a man who was attempting to rob Bennett's at gunpoint hit a customer with a hammer. Neither of the parties provided the court with a police report regarding this incident. The

record also shows that at an unspecified time before the assault, "there were one or two incidents where kids broke in for the purpose of burglarizing [Bennett's]." Additionally, the owner of Bennett's, Carroll Bennett, carried a small pistol in his pocket "for his own safety and protection" while he was working at the store and there were bars on the store's windows.

Brent Exum, a former police officer for the City of Adel opined that the vicinity of Martin Luther King Drive and its intersection with Fourth through Ninth Streets was "a high crime area" where "narcotics were commonly sold" in the year 2000. According to Exum, Martin Luther King Drive "is near what was known as Bennett's" and based on his experience as a police officer, "an isolated store, such as Bennett's Grocery, often appears to be a readily available source of cash to drug users and traffickers."

The district attorney who prosecuted the two men who robbed the store and assaulted Peters averred that if a railroad investigator had talked with him, he would have told an investigator that railroad employees on the ground were "at risk of a robbery or assault by drug users and drug traffickers" in the area around Bennett's. One of the perpetrators who attacked Peters was arrested less than one-half mile away from Bennett's for drugs and weapons charges less than two months before the assault.

The trial court denied the railroad's motion for summary judgment, noting that Peters submitted evidence that a jury might find "sufficient to put the Defendant on notice that general criminal activity, if not crimes of an aggravated nature, were taking place in the area." After construing the evidence in favor of Peters, the trial court concluded:

> a jury could conclude that the Plaintiff and his crew were meeting at Bennett's Grocery in furtherance of their employment obligations with Defendant; that the Plaintiff had previously notified the Defendant's police/security department of illegal activity in this area of Adel; that the Defendant failed to conduct a safety investigation as a follow-up to Plaintiff's complaints, that such an investigation would have disclosed that Bennett's Grocery had been burglarized on two occasions and was previously the location of an armed robbery and severe beating, and that the general area around Bennett's Grocery was a high crime rate area; and that the Plaintiff's injuries were foreseeable and resulted, at least in part, from the Defendant's negligence.

In its recitation of applicable law, the trial court stated that "slight negligence, defined as failure to exercise great care, is sufficient for

liability to attach," citing *Kelson v. Central of Ga. R. Co.*, 234 Ga. App. 200, 203 (505 SE2d 803) (1998).

1. The railroad contends that the trial court erred when it applied a duty of "great care" based on this Court's opinion in *Kelson v. Central of Ga. R. Co.*, 234 Ga. App. 200. In *Kelson*, we affirmed the trial court's grant of summary judgment to the railroad in a FELA case because the plaintiff's conduct was the sole proximate cause of his injuries. Id. In a general summary of FELA law, we noted that

> [s]light negligence, necessary to support an FELA action, is defined as a failure to exercise *great* care, and that burden of proof, obviously is much less than the burden required to sustain recovery in ordinary negligence actions. (Citation omitted; emphasis in original.) *Boeing v. Shipman*, 411 F2d 365, 371 (4) (5th Cir. 1969).

(Punctuation omitted.) Id. at 203 (1) (a).

Our statement in *Kelson* that a railroad is required to exercise "great care" is incorrect. It is well established "that nothing in the text or structure of the FELA-Jones Act legislation suggests that the standard of care to be attributed to either an employer or an employee is anything different than ordinary prudence under the circumstances." *Gautreaux v. Scurlock Marine*, 107 F3d 331, 338 (5th Cir. 1997). Indeed, at the time we issued *Kelson*, the authority on which we relied to support a duty of great care, *Boeing v. Shipman*, 411 F2d at 365, had been overruled because it applied an improper duty of great care. *Gautreaux v. Scurlock Marine*, 107 F3d at 336.

We need not overrule *Kelson*, however, because our notation that a railroad owes a duty of great care was dicta not essential to our holding that the plaintiff's negligence was the sole proximate cause of his injuries. See *Dunagan v. State*, 269 Ga. 590, 593 (2) (a), n. 4 (502 SE2d 726) (1998) (holding it is not necessary to overrule dicta); *White v. State*, 213 Ga. App. 429, 430 (1) (445 SE2d 309) (1994) (physical precedent only) (statements in an opinion concerning a rule of law not necessarily involved in or essential to determination of the case before the court are nonbinding dicta). Instead, we note that this dicta in *Kelson*, as well as similar dicta in its progeny, should not be followed. See *Phelps v. CSX Transp.*, 280 Ga. App. 330 (634 SE2d 112) (2006); *Belcher v. CSX Transp.*, 255 Ga. App. 726 (566 SE2d 370) (2002), rev'd in part on other grounds, *CSX Transp. v. Belcher*, 276 Ga. 522 (579 SE2d 737) (2003); *Fulmore v. CSX Transp.*, 252 Ga. App. 884 (557 SE2d 64) (2001).

Although the trial court applied the wrong standard of great care under FELA, a reversal is not warranted on this basis. We will review

the denial of the railroad's motion for summary judgment de novo under the correct standard. *Munroe v. Universal Health Svcs.*, 277 Ga. at 864-865.

2. The railroad contends that the trial court should have granted summary judgment in its favor because it cannot be held "liable for the violent and unforeseeable assault upon the plaintiff by a convicted murderer" as a matter of law. We agree and reverse.

> A railroad company is not an insurer in a FELA case. What the carrier must do is exercise reasonable care in view of the existing circumstances. What constitutes negligence in a particular situation is determined by common law rules as interpreted by federal decisions. The carrier is required to take precautions commensurate with danger inherent in the situation and to exercise ordinary care proportionate to the consequences that might be reasonably anticipated from neglect.

*Hepner v. Southern R. Co.*, 182 Ga. App. 346, 347 (356 SE2d 30) (1987). While a FELA "employer has a non-delegable duty to exercise reasonable care to provide employees with a safe place to work," *Southern R. Co. v. Montgomery*, 192 Ga. App. 308, 309 (1) (384 SE2d 907) (1989), "reasonable foreseeability of harm is an essential ingredient of Federal Employers' Liability Act negligence." (Citations omitted.) *Gallick v. Baltimore & Ohio R. Co.*, 372 U. S. 108, 117 (83 SC 659, 9 LE2d 618) (1963). Although the meaning of reasonable foreseeability under FELA "remains somewhat elusive and abstract," it equates with "notice, either actual or constructive." (Citation omitted.) *Williams v. Nat. R. Passenger Corp.*, 161 F3d 1059, 1062 (1998). "Thus, an employer is not liable if it has no reasonable way of knowing that a potential hazard exists." Id.

In this case, there is no evidence showing that the railroad should have reasonably foreseen that Peters might be the victim of a random criminal assault at a convenience store owned by a third party. See *Davis v. Burlington Northern*, 541 F2d 182, 186 (8th Cir. 1976) (to recover for negligence in failing to provide a safe workplace, "the plaintiff first had to establish that the railroad could have reasonably foreseen that the plaintiff would be where he was when the injury-causing event occurred"). First, there is no evidence that Peters, or any of his co-workers, told a supervisor that they met with G & F's crew inside Bennett's, and Peters' trainmaster testified unequivocally that he did not know such meetings took place. Peters' conclusory and equivocal deposition testimony that he thought his supervisors knew, but could not say definitely, is insufficient to establish a genuine issue of material fact about his employer's actual knowledge

of the meeting place. See *Smith v. Jones*, 278 Ga. 661, 662 (2) (604 SE2d 187) (2004) (conclusory affidavit that is not supported by substantiating facts or circumstances is insufficient to raise a genuine issue of material fact); *Anglin v. Harris*, 244 Ga. App. 140, 142 (1) (534 SE2d 874) (2000) (testimony of a party construed against him when it is "self-contradictory, vague, or equivocal").

We likewise find no genuine issue of material fact with regard to whether the railroad should have known that Peters was conducting work-related meetings at Bennett's. The evidence shows that Peters also met with G & F's crew in the morning at the railroad's depot in Adel and on the track that ran behind Bennett's. Thus, there was more than one location, on the railroad's property or right of way, for the crews to meet, and no reason for the railroad to anticipate that Peters would conduct work-related meetings on a third party's property.

Second, even if we were to assume, without deciding, that the railroad should have further investigated Peters' complaints about the Adel area, none of these complaints placed the railroad on notice that it should investigate the safety of Bennett's, a convenience store owned by a third party. All of the complaints related to incidents that occurred while Peters was working on the railroad's property or right of way. The Fourth Circuit's opinion in *Mosco v. Baltimore & Ohio R.*, 817 F2d 1088 (4th Cir. 1987), is instructive on this issue. In *Mosco*, the court was unwilling to hold "that the FELA imposes a duty on railroad employers to inspect premises owned by a third person for the purpose of detecting the intentional criminal activity of trespassers that may occur there." Id. at 1093.

Peters argues that we should find that his assault on a third party's property was foreseeable based on the Illinois Court of Appeals decision in *Vandaveer v. Norfolk & Western R. Co.*, 222 NE2d 897 (Ill. App. 1966). The facts of *Vandaveer* are distinguishable from the facts of this case, however, because in *Vandaveer* it was undisputed that the railroad knew that, as part of her work duties, the plaintiff would be on the third party's property. In this case, the railroad did not know and could not have reasonably foreseen that Peters was meeting G & F's crew at Bennett's. As a result, the criminal assault of Peters in that location was not reasonably foreseeable to the railroad.

Because the trial court erred by denying the railroad's motion for summary judgment on the grounds of reasonable foreseeability, we reverse.

*Judgment reversed. Johnson, P. J., and Miller, J., concur.*

DECIDED MARCH 13, 2007 — 

Hall, Bloch, Garland & Meyer, John S. Stewart, for appellant.
Helms & Helms, Jack J. Helms, Jr., Berrien L. Sutton, for appellee.