**THIRD DIVISION**
**DOYLE, P. J.,**
**BROWN, J., and SENIOR APPELLATE JUDGE PHIPPS**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
          **https://www.gaappeals.us/rules**

**February 6, 2023**

# In the Court of Appeals of Georgia

A22A1706. ALLI v. ULTRA GROUP OF COMPANIES, INC.

DOYLE, Presiding Judge.

At issue in this interlocutory appeal is whether the Georgia Lottery Corporation ("GLC") has exclusive jurisdiction over lawsuits filed between coin-operated amusement machine ("COAM") licensees. Mumtaz M. Alli entered into a contract to lease COAMs from Ultra Group of Companies, Inc., and Ultra later sued Alli in DeKalb County. Alli moved to dismiss for lack of subject-matter jurisdiction and to refer the case to arbitration under the Georgia Lottery Corporation ("GLC"), and the court denied the motion and transferred the case to Gwinnett County (hereinafter, "the trial court") . Alli appeals the trial court's denial of her motion to review and correct the prior DeKalb order, arguing that OCGA § 50-27-102 (d) (2) confers exclusive subject-matter jurisdiction over disputes between COAM licensees to the GLC for

arbitration. For the reasons that follow, we affirm.

The record shows that Ultra and Alli entered into a contract wherein Alli agreed to lease COAMs[1] owned by Ultra for use in a gas station convenience store owned by Alli. Under their contract, Ultra is a COAM "master licensee," and Alli is a COAM "location licensee."[2] Ultra sued Alli in the Superior Court of DeKalb County, asserting claims for breach of contract, conversion of property, money had and received, undercapitalization, and punitive damages.[3] Alli moved to dismiss, arguing that the court did not have subject-matter jurisdiction over the claims because OCGA § 50-27-102 (d) (2) confers exclusive subject-matter jurisdiction over disputes between COAM licensees to the GLC for arbitration.

---

[1] COAMs are machines "of any kind or character used by the public to provide amusement or entertainment whose operation requires the payment of or the insertion of a coin, bill, other money, token, ticket, card, or similar object and the result of whose operation depends in whole or in part upon the skill of the player, whether or not it affords an award to a successful player." OCGA § 50-27-70 (b) (2) (A). This broad definition includes pinball machines, skeeball machines, video games, racing games, air hockey machines, trivia machines, and jukeboxes and similar music machines. See id.

[2] See OCGA § 50-27-70 (b) (1) (defining "licensee"), (b) (6) (defining "location license"), (b) (8) (defining "location owner or location operator"), (b) (10) (defining "master license"), (b) (10.1) (defining "master licensee").

[3] We previously affirmed a superior court decision vacating an arbitration award against Alli related to this contract based on Ultra's failure to serve Alli. See *Ultra Group of Companies, Inc. v. Alli*, 352 Ga. App. 71 (833 SE2d 751) (2019).

2

The trial court denied the motion to dismiss, finding that: (1) it had jurisdiction to hear all of the claims asserted in the complaint; (2) the GLC did not have jurisdiction to hear the undercapitalization and punitive damages claims because they are not COAM claims; and (3) the GLC's jurisdiction over COAM claims under OCGA § 50-27-102 (d) (2) is not exclusive.[4] After the DeKalb court granted Alli's subsequent motion to transfer venue to the Superior Court of Gwinnett County, Alli filed in Gwinnett a motion under Uniform Superior Court Rule 19.1 (I),[5] seeking to "review and correct" the trial court's order denying the motion to dismiss or, in the alternative, compel arbitration under OCGA § 50-27-102 (d). The trial court denied the motion in a one-page order, but granted Alli a certificate of immediate review. This Court granted Alli's interlocutory application, giving rise to this appeal.

On appeal, Alli argues that OCGA § 50-27-102 (d) confers exclusive jurisdiction over claims between COAM licensees to the GLC and that the trial court

---

[4] The DeKalb court denied Alli's request for a certificate of immediate review.

[5] USCR 19.1 (I) provides that "[a]ny interlocutory or other order theretofore entered in the action, upon the motion of any party, shall be reviewed, and thereafter reissued or vacated by the court to which the action was transferred." "[R]ather than conducting a judicial review as an appellate body, the transferee court's task contemplated under Rule 19.1 (I) is to stand in the place of the transferor court and consider whether any prior rulings were correct. This type of review is similar to the plenary power a court has to revise or vacate its own orders and judgments during the term in which they were rendered." *Cook Pecan Co., Inc. v. McDaniel*, 337 Ga. App. 186, 189 (1) (786 SE2d 852) (2016).

3

erred by not dismissing the case for lack of subject-matter jurisdiction or referring the

parties to arbitration. We disagree.

"Where, as here, a case turns on statutory interpretation and resolution of

questions of law, we apply a de novo standard of review.[6]"

> [I]n all interpretations of statutes, the courts shall look diligently
> for the intention of the General Assembly. In so doing, the ordinary
> signification shall be applied to all words. Where the language of a
> statute is plain and susceptible to only one natural and reasonable
> construction, courts must construe the statute accordingly. In fact, where
> the language of a statute is plain and unambiguous, judicial construction
> is not only unnecessary but forbidden[7].

The GLC regulates COAMs pursuant to the statutory framework established

in OCGA § 50-27-70 et seq.OCGA § 50-27-102 (d) provides that the GLC

> shall have jurisdiction of all disputes between and among any licensees
> or former licensees whose licenses were issued pursuant to this article
> relating in any way to any agreement involving coin operated
> amusement machines, distribution of funds, tortious interference with
> contract, other claims against a subsequent master license holder or
> location owner, or any other claim involving coin operated amusement

---

[6] *Stockton v. Shadwick,* 362 Ga. App. 779, 780 (870 SE2d 104) (2022)

[7](Punctuation and citations omitted.) *Abdulkadir v. State,* 279 Ga. 122,123 (2) (610 SE2d 50) (2005), superceded by statute on other grounds.

machines. . . .

The statute does not state that COAMs have *exclusive* jurisdiction over COAM contract claims between licensees, and "[a] court of law is not authorized to rewrite the statute by inserting additional language that would expand its application."[8] The General Assembly could have vested the GLC with exclusive jurisdiction,[9] and it elected not to do so. The jurisdiction of superior courts in Georgia is vested by the Constitution of the State of Georgia and by statute.[10] And "neither the legislature nor a judge can limit the jurisdiction of a superior court."[11] Accordingly, the superior

[8] *Abdulkadir*, 279 Ga. at 124 (2), citing *Thompson v. Talmadge*, 201 Ga. 867, 874 (41 SE2d 883) (1947).

[9] See, e.g., OCGA § 34-9-23 (conferring "exclusive system and procedure for the resolution of disputes" in workers' compensation cases); OCGA § 40-13-29 (granting "exclusive jurisdiction of all traffic misdemeanor cases" in probate court in certain counties under certain circumstances); OCGA § 43-29-5 (granting the State Board of Dispensing Opticians "exclusive jurisdiction" of certain matters); OCGA § 45-19-41 (granting the administrator of the Georgia Commission on Equal Opportunity "exclusive jurisdiction" over certain claims); OCGA § 52-2-30 (conferring "exclusive jurisdiction" to the Superior Court of Chatham County over actions to enforce rights under the Georgia Ports Authority Act).

[10] See Ga. Const. Art. VI, Sec. IV, Par. I ("The superior courts shall have jurisdiction in all cases, except as otherwise provided in this Constitution."); OCGA § 15-6-8 (1) (granting superior courts authority "[t]o exercise original, exclusive, or concurrent jurisdiction, as the case may be, of all causes, both civil and criminal, granted to them by the Constitution and laws").

[11] *Vann v. DeKalb County Bd. of Tax Assessors*, 186 Ga. App. 208, 209 (1) (367 SE2d 43) (1988), citing *Fulton County v. Woodside*, 222 Ga. 90, 100 (149 SE2d

court properly concluded that Ultra's claims are within its subject-matter jurisdiction.[12]

_____

140).

[12] Alli points out that in several decisions this Court has referenced the GLC's exclusive jurisdiction over claims between COAM licensees. See, e.g., *Coin-Op Solutions, LLC v. Metro Carrollton Corp.*, 360 Ga. App. 44, 47 (1) (860 SE2d 599) (2021) ("[T]he GLC regulates COAMs according to the statutory framework established in OCGA § 50-27-70 et seq. Under that framework, the GLC shall have jurisdiction of all disputes between and among any licensees relating in any way to any agreement involving coin operated amusement machines, distribution of funds, or other claims against a subsequent master license holder or location owner. This exclusive dispute resolution and appeal process is governed by OCGA § 50-27-102 (d).") (footnotes and punctuation omitted) ; *Coin-Op Solutions, LLC v. Norcross Convenience, LLC*, 357 Ga. App. 640, 642 (1) (851 SE2d 226) (2020) ("The GLC has exclusive jurisdiction of all disputes between and among any licensees or former licensees whose licenses were issued pursuant to the COAM statutes relating in any way to any agreement involving COAMs, distribution of funds, tortious interference with contract, other claims against a subsequent master license holder or location owner, or any other claim involving coin-operated amusement.") (physical precedent only) ; *Ultra Group of Companies, Inc. v. Inam Intl., Inc.*, 354 Ga. App. 304, 304 (840 SE2d 708) (2020) ("Disputes among COAM licensees are governed by the statutory framework associated with the GLC. Pursuant to OCGA § 50-27-102 (d), any disputes between COAM operators must be submitted to arbitration before a hearing officer or arbitration service approved by GLC.") The issue on appeal in these cases, however, was not whether superior courts have jurisdiction over COAM licensee disputes, and therefore those statements are dicta. In *Metro Carrollton*, for example, this Court addressed whether a party could collaterally attack the GLC process in superior court, rather than follow the GLC appeal process provided by statute. See *Metro Carrollton Corp.*, 360 Ga. App. at 48-49 (1). See generally *Ga. Southern & Florida R. Co. v. Peters*, 284 Ga. App. 139, 144 (1) (643 SE2d 786) (2007) (explaining that statements in an opinion that are not involved in or essential to determination of the issues before the court are dicta). "'[D]icta is not binding on anyone for any purpose,'" *Alexander v. State*, 313 Ga. 521, 529 (3) (870 SE2d 729) (2022), quoting *Edwards v. Prime, Inc.*, 602 F3d 1276, 1298 (V) (C) (11th Cir. 2010),

*Judgment affirmed. Brown, J., and Senior Appellate Judge Herbert E. Phipps*

*concur*.

---

and it is not necessary to overrule dicta. See *Dunagan v. State*, 269 Ga. 590, 593 (2) (a), n.4 (502 SE2d 726) (1998). Nevertheless, we caution parties and trial courts that the dicta in these cases "should not be followed" to support the proposition that superior courts lack jurisdiction over issues arising in COAM disputes. *Peters*, 284 Ga. App. at 144 (1).